'O'

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVANGER'S DOG AND CAT FOOD CO, INC., an Illinois corporation,<br><br>          Plaintiff,<br><br>     v.<br><br>ENVIRONMENTAL DEMOCRACY PROJECT, a California not-for-profit corporation; and DOES 1-100,<br><br>          Defendants. | CV 21-08489-RSWL-ASx<br><br>**ORDER re: MOTION TO DISMISS** [17] and **MOTION TO STRIKE** [18] |

     Currently before the Court are Defendant
Environmental Democracy Project's ("Defendant") Motion
to Dismiss [17] and Motion to Strike [18].  Having
reviewed all papers submitted pertaining to these
Motions, the Court **NOW FINDS AND RULES AS FOLLOWS**: the
Court **GRANTS in part** and **DENIES in part** the Motion to
Dismiss and **DENIES** the Motion to Strike **as moot.**

# I.   BACKGROUND

**A.   Factual Background**

Plaintiff Evanger's Dog and Cat Food Company, Inc. ("Plaintiff") is a corporation that sells a line of pet food products under the brand name "OrgaNOMics" (the "Products").  First Am. Compl. ("FAC") ¶¶ 1, 6, ECF No. 13.  Plaintiff asserts that the Products are not sold as organic products, but the ingredient panel and advertising for the Products state that the various flavors include organic produce.  Id. ¶ 6.  Plaintiff further asserts that the ingredients represented as organic are 100% organic.  Id.

On April 22, 2021, Plaintiff received a letter from a law firm that purported to represent Defendant.  Id. ¶ 10.  Plaintiff asserts that Defendant "is the alter ego of its attorneys . . . whose purpose ostensibly is to rectify violations of certain governmental regulations." Id.  The letter stated that Plaintiff's marketing and sale of the Products violated California's Organic Food and Farming Act ("COFFA")[1] because the Products are "prominently labeled as organic on their principal display panels, and are represented as being 'Organically Sourced' and 'Made with Organic Produce'" but do not contain the required 95% of certified organic

---

[1] COFFA requires products that are "sold as organic" to consist "of products manufactured only from raw or processed agricultural products."  Cal. Health & Safety Code § 110820. Ingredients other than raw or processed agricultural products may be added to the product only if they do not represent more than 5% of the weight of the total finished product.  Id.

ingredients.  Id.; FAC Ex. 1, ECF No. 13-1.  The letter also stated that Defendant intended to file a lawsuit in California to rectify the violations shortly, and it invited Plaintiff to contact Defendant to "discuss a potential settlement . . . short of litigation."  FAC Ex. 1.

On September 8, 2021, Defendant sent a letter to Chewy.com ("Chewy") stating that Chewy was selling Plaintiff's Products in violation of COFFA.  FAC ¶ 11; FAC Ex. 2, ECF No. 13-2.  Specifically, the letter identified five Products that are prominently labeled on the principal display panel as being "organic" but do not contain the required 95% of certified organic materials.  FAC Ex. 2.  The letter demanded that Chewy cease selling the Products immediately and that Defendant intended to file a lawsuit if Chewy failed to comply.  FAC ¶ 11; FAC Ex. 2.  Chewy then notified Plaintiff that it would no longer sell the Products and would refuse to do so until Defendant's objections were resolved.  FAC ¶ 12.

After receiving this notice from Chewy, Plaintiff sent an email to Defendant stating that Defendant's claims about Plaintiff's COFFA violations lacked merit and requested that Defendant contact Chewy and withdraw its threat of litigation.  Id. ¶ 28; FAC Ex. 3, ECF No. 13-3.  When Defendant failed to comply with Plaintiff's request, Plaintiff filed the instant suit on October 26, 2021.  See Compl., ECF No. 1.  On November 1, 2021,

1   Defendant filed a lawsuit against Plaintiff in the
2   Superior Court of California, County of Alameda,
3   alleging a single cause of action to enjoin Plaintiff
4   from selling the Products in violation of COFFA.  See
5   Req. for Judicial Notice in Supp. of Mot. to Dismiss Ex.
6   1, ECF No. 17-1.  Plaintiff then removed that suit to
7   the United States District Court for the Northern
8   District of California on November 24, 2021, where it
9   remains pending.  Id.

10  **B.   Procedural Background**

11      Plaintiff initiated this Action [1] against
12  Defendant on October 26, 2021, seeking two forms of
13  declaratory relief: (1) declaratory judgment that the
14  Products do not violate COFFA; and (2) to the extent the
15  Products violate COFFA, declaratory judgment that this
16  application of COFFA violates the First Amendment.  On
17  November 23, 2021, Plaintiff filed its First Amended
18  Complaint ("FAC") [13], which added four new causes of
19  action: (3) tortious interference with contractual
20  relations; (4) tortious interference with prospective
21  economic relations; (5) negligent interference with
22  prospective economic relations; and (6) inducing breach
23  of contract.

24      On December 19, 2021, this Court granted [15] the
25  Attorney General's Ex Parte Application to Respond to
26  Notice of Constitutional Question.  Defendant filed the
27  instant Motion to Dismiss [17] and Motion to Strike [18]
28  on December 27, 2021.  Plaintiff filed Oppositions to

each Motion [22, 23] on January 4, 2022.  Defendant
replied [24, 26] on January 11, 2022.

## II.   DISCUSSION

**A.**   **Legal Standard**

   1.   Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil
Procedure allows a party to move for dismissal of one or
more claims if the pleading fails to state a claim upon
which relief can be granted.  A complaint must "contain
sufficient factual matter, accepted as true, to state a
claim to relief that is plausible on its face."
Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation
omitted).  Dismissal is warranted for a "lack of a
cognizable legal theory or the absence of sufficient
facts alleged under a cognizable legal theory."
Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699
(9th Cir. 1988) (citation omitted).

In ruling on a 12(b)(6) motion, a court may
generally consider only allegations contained in the
pleadings, exhibits attached to the complaint, and
matters properly subject to judicial notice.  Swartz v.
KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007).  A court
must presume all factual allegations of the complaint to
be true and draw all reasonable inferences in favor of
the non-moving party.  Klarfeld v. United States, 944
F.2d 583, 585 (9th Cir. 1991).  The question is not
whether the plaintiff will ultimately prevail, but
whether the plaintiff is entitled to present evidence to

support its claims.  <u>Jackson v. Birmingham Bd. of Educ.</u>,
544 U.S. 167, 184 (2005) (quoting <u>Scheuer v. Rhodes</u>, 416
U.S. 232, 236 (1974)).  While a complaint need not
contain detailed factual allegations, a plaintiff must
provide more than "labels and conclusions" or "a
formulaic recitation of the elements of a cause of
action."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555
(2007).  However, "a well-pleaded complaint may proceed
even if it strikes a savvy judge that actual proof of
those facts is improbable, and 'that a recovery is very
remote and unlikely.'"  <u>Id.</u> at 556 (quoting <u>Scheuer v.
Rhodes</u>, 416 U.S. 232, 236 (1974)).

  2. <u>Motion to Strike</u>

  California's anti-Strategic Lawsuit Public
Participation ("anti-SLAPP") statute provides for a
special motion to strike state law claims brought
"primarily to chill the valid exercise of the
constitutional rights of freedom of speech and petition
for the redress of grievances."  Cal. Civ. Proc. Code
§ 425.16(a).  "A court considering a motion to strike
under the anti-SLAPP statute must engage in a two-part
inquiry."  <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097,
1110 (9th Cir. 2003).  "First, a defendant must make an
initial prima facie showing that the plaintiff's suit
arises from an act in furtherance of the defendant's
rights of petition or free speech."  <u>Id.</u> (internal
quotation marks and citation omitted).  "Second, once
the defendant has made a prima facie showing, the burden

shifts to the plaintiff to demonstrate a probability of
prevailing on the challenged claims." Id. (internal
quotation marks and citation omitted).

**B.  Analysis**

    1.  Requests for Judicial Notice

     Pursuant to Rule 201 of the Federal Rules of
Evidence, "[a] court may judicially notice a fact that
is not subject to reasonable dispute because it . . .
can be accurately and readily determined from sources
whose accuracy cannot reasonably be questioned."  While
a court may take judicial notice of matters of public
record, a court may not take judicial notice of the
substance of such records if subject to reasonable
dispute. Lee v. City of Los Angeles, 250 F.3d 668, 689-
90 (9th Cir. 2001) (stating that a court may take
judicial notice of the fact that certain court records
were filed but not of the truth of any facts stated
therein).

     Defendant requests that the Court take judicial
notice of three documents: (1) the complaint filed by
Defendant in the Superior Court of California, County of
Alameda; (2) an instruction published by the National
Organic Program ("NOP") on the "Use of Brand or Company
Names Containing the Word 'Organic'"; and (3)
photographs of various Products' labels. See Req. for
Judicial Notice in Supp. of Mot. to Dismiss 1:26-2:3,
ECF No. 19; Req. for Judicial Notice in Supp. of Reply
2:10-13, ECF No. 25-1.

1      Defendant's first request involves a court record,
2   the existence of which is not subject to reasonable
3   dispute.  The Court therefore **GRANTS** Defendant's first
4   request and takes judicial notice that this complaint
5   was filed, that it rests on the allegations contained
6   within it, and that the action was then removed to the
7   United States District Court for the Northern District
8   of California.  See B&G Foods N.A., Inc. v. Embry, No.
9   2:20-cv-00526-KJM-DB, 2020 WL 5944330, at *1 n.2 (E.D.
10  Cal. Oct. 7, 2020).  However, the Court declines
11  Defendant's second and third requests because they
12  involve matters that are not relevant to determining
13  whether the allegations of the FAC, taken as true, state
14  a claim for relief.  See Gerritsen v. Warner Bros. Ent.
15  Inc., 112 F. Supp. 3d 1011, 1022 (C.D. Cal. 2015)
16  (declining to take judicial notice of a chart as
17  irrelevant and subject to reasonable dispute because it
18  diverted from the facts as stated in the complaint).
19  Accordingly, the Court **DENIES** Defendant's second and
20  third requests for judicial notice of the NOP
21  instruction and the photographs.
22      2.  Motion to Dismiss
23      Defendant moves to dismiss the Complaint, arguing:
24  (1) Plaintiff's entire cause of action is barred by the
25  Noerr-Pennington doctrine; (2) Plaintiff's tort claims
26  should be dismissed because they are based on privileged
27  communications; and (3) Chewy must be joined to this
28  Action as a necessary party with respect to Plaintiff's

8

tort claims.  *See generally* Def.'s Mot. to Dismiss, ECF No. 17.  The Court concludes that the Noerr-Pennington doctrine bars Plaintiff's tort claims (Counts 3-6) but not Plaintiff's claims for declaratory relief.  Because Defendant's second and third arguments pertain only to Plaintiff's tort claims, which are barred under Noerr-Pennington, the Court need not address those arguments.

a.  Applicability of *Noerr-Pennington* Doctrine

The Noerr-Pennington doctrine is derived from the First Amendment "right of the people . . . to petition the Government for a redress of grievances."  U.S. Const. amend. I.  "Under the Noerr-Pennington doctrine, those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct."  Sosa v. DIRECTV, Inc., 437 F.3d 923, 929 (9th Cir. 2006).  The doctrine has been extended to also protect petitioners from liability under state tort law.  Theme Promotions, Inc. v. News Am. Mktg. FSI, 546 F.3d 991, 1007 (9th Cir. 2008).  Petitioning activity directed at any branch of government is protected under Noerr-Pennington, including petitions in the form of a lawsuit in federal or state court.  Sosa, 437 F.3d at 929-30 (quoting Cal. Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 510-11 (1972)).  "Conduct incidental to a lawsuit, including a pre-suit demand letter, [also] falls within the protection of the Noerr-Pennington doctrine."  Theme Promotions, 546 F.3d at 1007.

Here, each of Plaintiff's tort claims against Defendant arises from the damages allegedly caused by Defendant's letter to Chewy.  See FAC ¶¶ 23-48.  This letter asserted that the Products Chewy obtained from Plaintiff violated COFFA requirements and that Defendant intended to file a lawsuit if Chewy did not confirm with Defendant that it had stopped selling the Products.  See FAC Ex. 2.  This letter therefore qualifies as a pre-suit demand letter that was written in anticipation of Defendant's petition to the government — i.e., a lawsuit seeking COFFA compliance from Plaintiff and the retailers who sell Plaintiff's Products.  The letter therefore constitutes protected petitioning activity, and Defendant is immune from liability for damages caused by this letter pursuant to Noerr-Pennington.  See Theme Promotions, 546 F.3d at 1007.

Plaintiff argues that Defendant is not entitled to Noerr-Pennington protection because Defendant was acting in its "capacity as a private attorney general on behalf of the people of the State of California and not on behalf of itself."  Opp'n 10:14-17.  However, "Noerr-Pennington can apply to government actors acting in their official capacity" so long as those actors "engage with other state entities for the sake of 'procuring favorable government action.'"  Comm. to Protect our Agric. Water v. Occidental Oil & Gas Co., 235 F. Supp. 3d 1132, 1158-59 (E.D. Cal. 2017) (citing Manistee Town Ctr. V. City of Glendale, 227 F.3d 1090, 1094 (9th Cir.

2000); quoting <u>Kottle v. Nw. Kidney Ctrs.</u>, 146 F.3d
1056, 1060 (9th Cir. 1998)).  Even if Defendant were
considered to be a state actor when it sent the demand
letter to Chewy, it did so with the intent to engage
with the courts and procure a favorable ruling to
enforce COFFA requirements.  <u>See</u> FAC ¶ 10.  This conduct
was therefore petitioning activity that is protected
under <u>Noerr-Pennington</u>.

Plaintiff similarly argues that <u>Noerr-Pennington</u>
should not apply to Defendant's petition because
Defendant "has suffered no individual injury."  Opp'n
10:17-19.  Plaintiff cites no authority, and the Court
has found none, to support the proposition that a
petitioner must suffer an individual injury to be
afforded <u>Noerr-Pennington</u> immunity.  On the contrary,
the Ninth Circuit has recognized that petitions by
representative entities "may be nearly as vital to the
functioning of a modern representative democracy as
petitioning that originates with private citizens."
<u>Manistee Town Ctr.</u>, 227 F.3d at 1093.  Accordingly,
Defendant is entitled to immunity from liability under
<u>Noerr-Pennington</u> for its petitioning activity.

b.   <u>Sham Litigation Exception</u>

Not all petitioning activity is protected under the
<u>Noerr-Pennington</u> doctrine.  "Pre-suit letters
threatening legal action may . . . be restricted by law
where they include representations so baseless that the
threatened litigation would fall into the 'sham

litigation' exception." Theme Promotions, 546 F.3d at
1007.  In other words, a petitioner will not be shielded
from liability for damages caused by a demand letter
where the threatened lawsuit is "objectively baseless
and the defendant's motive in bringing it was unlawful."
Sosa, 437 F.3d at 938.  The Ninth Circuit has imposed a
heightened pleading standard to claims of sham
litigation because "when a plaintiff seeks damages . . .
for conduct which is prima facie protected by the First
Amendment, the danger that the mere pendency of the
action will chill the exercise of First Amendment rights
requires more specific allegations than would otherwise
be required." Kottle, 146 F.3d at 1063.  In particular,
a plaintiff alleging the sham litigation exception
should specify "exactly what representations [defendant]
made, or to whom; with whom [defendant] conspired; [and]
what exactly its 'improper and/or unlawful' methods of
advocacy were." Id.

     Plaintiff first argues that Defendant's claim in
its demand letter to Chewy that the Products were "sold
as organic" was objectively baseless.  It reasons that
the letter asserts that the Products were labeled as
"organic" on the principal display panel, yet the word
"organic" appears nowhere on the principal panel of any
Product.  Opp'n 14:13-17.  However, Defendant believed
that use of the brand name "OrgaNOMics" qualified as a
grammatical variation of the word "organic" under COFFA,
and no allegation in the FAC convinces the Court that

this belief was unreasonable.  Because there is very
little case law interpreting COFFA's definition of "sold
as organic," this Court cannot say with any certainty
that the California legislature intended to exclude
products sold under a brand name such as "OrgaNOMics"
from this definition.  See Pro. Real Estate Invs., Inc.
v. Columbia Pictures Indus., Inc., 508 U.S. 49, 65
(1993) ("In light of the unsettled condition of the law,
[Petitioner] plainly had probable cause to sue.").

    The fact that Chewy decided to avoid a potential
lawsuit by complying with the demand letter suggests
that Defendant's claims may have merit.  See Theme
Promotions, 546 F.3d at 1008 ("The fact that this
ongoing litigation settled suggests that the original
suit was not objectively baseless."); Toyo Tire & Rubber
Co., Ltd. v. CIA Wheel Grp., No. SACV 15-246-JLS (DFMx),
2015 WL 4545187, at *3 (stating that other parties'
settlement of claims in the same proceeding "cannot be
reconciled with [the] allegation that [those claims]
were 'objectively baseless'").  Moreover, Defendant's
letter to Plaintiff and the lawsuit it actually filed
against Plaintiff discuss not only the representations
made on the principal panel of the Products but also
Plaintiff's alleged advertising of the Products as
organically sourced and made with organic ingredients.
See FAC Ex. 1; RJN Ex. 1 ¶ 15.  Viewing Defendant's
petitioning activity as a whole, the Court concludes
that Defendant's claim that the Products were "sold as

1  organic" is not objectively baseless.

2      Plaintiff additionally argues that Defendant's
3  claims in its demand letter to Chewy were objectively
4  baseless because Defendant makes no reference to the
5  actual ingredients contained in the Products.  Opp'n
6  16:14-28.  However, Defendant's claims may have merit
7  regardless of the details it chooses to disclose in a
8  particular demand letter.  Defendant's petitioning
9  activity is protected so long as Defendant's claims are
10 "potentially meritorious."  Theme Promotions, 546 F.3d
11 at 1007.  Plaintiff bears the burden of pleading how and
12 why Defendant's claims are a sham, and the FAC fails to
13 explain why Defendant's belief that the Products
14 contained less than the required percentage of organic
15 ingredients was unreasonable.  See EcoDisc Tech. AG v.
16 DVD Format/Logo Licensing Corp., 711 F. Supp. 2d 1074,
17 1084 (C.D. Cal. 2010) (holding that plaintiff failed to
18 meet the heightened pleading standard for the sham
19 litigation exception because the complaint contained no
20 allegation that the defendant's belief leading to its
21 petitioning conduct was unreasonable).

22      Finally, even if Defendant's claims were
23 objectively baseless, Plaintiff fails to adequately
24 plead that Defendant was petitioning for an unlawful
25 purpose.  The FAC does not allege that Defendant ever
26 had any purpose for its petitioning activity beyond
27 achieving compliance with the organics laws of
28 California.  Indeed, Plaintiff itself acknowledges that

Defendant's purpose is to "rectify violations of certain governmental regulations."  See FAC ¶ 10.  Moreover, the Court is not convinced that Defendant's delay in filing suit is indicative of bad faith.  Defendants may have simply wanted the issue resolved outside of court without resorting to litigation.  Because Plaintiff fails to allege any plausible alternative purpose that would amount to unlawful behavior, it has failed to meet its burden of pleading that Defendant had an unlawful motive for its petitioning conduct.

Accordingly, the sham litigation exception does not apply here.  Defendant is therefore entitled to immunity under Noerr-Pennington from liability for Plaintiff's state tort claims.  The Court therefore **GRANTS** the Motion to Dismiss as to Counts 3-6 of the FAC.

c.   Declaratory Judgment Claims

Plaintiff argues that the Motion to Dismiss should be denied as to Counts 1 and 2 of the FAC because the Noerr-Pennington doctrine does not bar claims for declaratory relief.  Opp'n 11:6-10.  Defendant counters that the doctrine bars any claim that burdens rights protected by the Petition Clause, and it should therefore bar Plaintiff's declaratory relief claims as well.  Reply 4:5-7.

"The essence of the Noerr-Pennington doctrine is that those who petition any department of the government for redress are immune from statutory [or tort] *liability* for their petitioning conduct."  Theme

Promotions, 546 F.3d at 1006 (emphasis added).  Other courts within this Circuit have therefore concluded that the Noerr-Pennington doctrine "immunizes a party from liability and not from an entire claim."  Cisco Sys., Inc. v. Becella's Etc., LLC, 402 F. Supp. 3d 813, 825 (N.D. Cal. 2019) (quoting Shell Gulf of Mex., Inc. v. Ctr. for Biological Diversity, Inc., No. 3:12-CV-0048-RRB, 2012 WL 12865419, at *9-*10 (D. Alaska June 26, 2012)).  It follows that where a claim does not seek to impose liability upon a defendant and does not otherwise burden the defendant's right to petition, Noerr-Pennington does not bar the claim.  See Sosa, 437 F.3d at 930 (stating that the first step in determining whether Noerr-Pennington bars a claim is to identify the burden it imposes on petitioning rights).

Here, Plaintiff's claims for declaratory relief do not seek to hold Defendant liable or to otherwise penalize Defendant for its petition to the courts. Rather, these claims seek a declaration that Plaintiff itself is not liable for violating COFFA.  Accordingly, the substance of these claims does not place a burden on Defendant's petitioning rights because they do not prevent or discourage Defendant from filing its own claims against Plaintiff.  See Cisco, 403 F. Supp. 3d at 824-25.  On the contrary, these claims ensure that Defendant will have its day in court to explain the violations it believes Plaintiff is committing.

Defendant nevertheless argues that Plaintiff's

claims for declaratory relief burden Defendant's
petitioning rights because they prevent Defendant from
being able to "petition state courts for enforcement of
a state law . . . by requiring [Defendant] to defend its
state law claims in federal court."  Reply 3:23-25.
However, Plaintiff's declaratory relief claims did not
prevent Defendant from filing a petition in state court,
as Defendant did shortly after this Action was filed.
Although Defendant's action was then removed to federal
court, removal is not a violation of Defendant's First
Amendment right to petition.  The right to petition
protects petitioners' "use of the channels and
procedures of state and federal . . . courts to advocate
their causes and points of view."  Cal. Motor. Transp.,
404 U.S. at 511.  Thus, the transfer of Defendant's
petition from one forum to another pursuant to well-
established rules of procedure is not a violation of
Defendant's First Amendment rights.  See Larkins v.
Moore, No. 16cv2661-LAB (NLS), 2018 WL 4468854, at *6
(S.D. Cal. Sept. 18, 2018) (citing Minn. State Bd. for
Comm. Colls. v. Knight, 465 U.S. 271, 282 (1984))
("[T]he right to petition does not include the right to
be heard in a particular manner or setting.").

    In sum, the Noerr-Pennington doctrine does not bar
Plaintiff's claims for declaratory relief because they
do not burden Defendant's right to petition.  The Court
therefore **DENIES** the Motion to Dismiss as to Counts 1
and 2 of the FAC.

3.  Motion to Strike

Defendant argues that Plaintiff's state tort claims should be stricken from the FAC under California's anti-SLAPP statute.  Def.'s Mot. to Strike 4:2-7, ECF No. 18. Because Counts 3-6 of the FAC are dismissed pursuant to the Noerr-Pennington doctrine, Defendant's Motion to Strike is **DENIED as moot.**

4.  Leave to Amend

"The Court should give leave [to amend] freely when justice so requires."  Fed. R. Civ. P. 15(a)(2).  While the Ninth Circuit has "stressed Rule 15's policy of favoring amendments," leave need not be granted where amendment would be "an exercise in futility."  Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989).  Here, granting Plaintiff leave to amend its state tort claims would be futile because the Noerr-Pennington doctrine would bar any tort claim arising from Defendant's demand letters.  See B&G Foods, 2020 WL 5944330, at *3.  Counts 3-6 of the FAC are therefore **DISMISSED with prejudice.**

///
///
///
///
///
///
///
///

18

1

### III.  CONCLUSION

Based on the foregoing, the Court **GRANTS in part** and **DENIES in part** Defendant's Motion to Dismiss.  The Motion is **DENIED** as to Counts 1 and 2 of the FAC.  The Motion is **GRANTED without leave to amend** as to Counts 3-6 of the FAC.  Defendant's Motion to Strike is **DENIED as moot.**

**IT IS SO ORDERED.**

DATED: January 20, 2022          /s/ Ronald S.W. Lew
                                _____
                                **HONORABLE RONALD S.W. LEW**
                                Senior U.S. District Judge